James **FERNHOFF**, Plaintiff-Appellant,

v.

**TAHOE REGIONAL PLANNING AGENCY, and Does I–XX, Defendants-Appellees.**

No. 85–1624.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1985.

Decided Oct. 28, 1986.

James Fernhoff, pro se.

Susan E. Scholley, Heaton, Doescher & Owen, Ltd., Carson City, Nev., for defendants-appellees.

Before SCHROEDER, REINHARDT, and BEEZER, Circuit Judges.

REINHARDT, Circuit Judge:

Appellant James Fernhoff, appearing *pro se*, petitioned for a writ of mandamus declaring either that the Tahoe Regional Planning Agency ("the Planning Agency") has no authority to prohibit him from developing a parcel of land he owns near Lake Tahoe or, in the alternative, directing the Planning Agency to grant any authorization necessary for him to develop the property. The district court granted the Planning Agency's motion for summary judgment and denied Fernhoff's petition. We affirm.

## I. BACKGROUND

Fernhoff owns 4.67 acres of land near Lake Tahoe and wishes to develop this property by dividing it into four lots and constructing a single-family house on each. On December 8, 1977, he submitted an application and parcel map to Douglas County for approval, and the County sent the application and map to the Planning Agency. The map depicted the four proposed lots as well as a proposed road providing access to them. By letter dated December 13, 1977 a member of the Planning Agency's staff notified Fernhoff that the map did not comply with its Land Use Ordinance 9.31 and requested him to furnish the following information so that it could complete its review: land capability, land use district, existing land coverage, and building footprints.

The Douglas County Department of Public Works sent Fernhoff a letter January 3, 1978 informing him that the Douglas County Planning Commission had at its regular meeting on December 29, 1977 approved his map subject to several conditions, including compliance with the Planning Agency's requirements that were mentioned in its December 13 letter and the paving of the road that the parcel map provided for. Fernhoff contends that he agreed to pave the road, and otherwise immediately complied with the conditions contained in the January 3 letter.

On May 12, 1978, Fernhoff began the necessary grading and clearing for the road depicted on the parcel map. Four days later he was arrested, and on May 18, 1978 he was charged with eight misdemeanor counts alleging violations of various Nevada statutes, Douglas County Code sections, and Planning Agency ordinances which regulate grading and felling of trees. A justice court jury convicted him, but the conviction was reversed on appeal because of an unconstitutional jury instruction. On May 19, 1978, Douglas County filed a civil complaint seeking injunctive relief to prevent Fernhoff from further grading and to require him to clean up the site to minimize the danger of fire and erosion.

At a hearing on the County's request for a temporary restraining order, the parties entered into a court-approved stipulation providing that Fernhoff would do no further grading or tree cutting and would implement erosion control measures and clear away debris on the property. On May 31, 1978, pursuant to further stipulation by the parties, the court ordered that the May 19 stipulation remain in effect until further order of the court. The suit was dismissed January 3, 1983.

On August 18, 1980 the County issued Fernhoff an administrative permit for a variance from the land coverage restrictions on his property. It appears that Fernhoff needed this variance in order to construct the road on his property without violating Planning Agency regulations governing the percentage of his land that could be developed. Fernhoff had also filed an application for additional land coverage with the Planning Agency on May 10, 1980. On September 24, 1980, Fernhoff personally appeared before that body to urge that the application be granted. On September 26, 1980, he was notified that the Planning Agency had denied the application and that his road was therefore unauthorized and must be restored to its natural condition.

Fernhoff filed a petition for writ of mandamus in Nevada district court on January 15, 1981 requesting the court to order Douglas County to issue all necessary permits and approvals for his project. Fernhoff alleged that, following the County's approval of his map, he had fulfilled all the required conditions, but the County had refused to fulfill its obligation to issue the proper permits. On March 7, 1983, Fernhoff and Douglas County entered into a stipulation providing in pertinent part:

1. That Petitioner appeared before the Douglas County Board of Commissioners on September 9, 1982, at which time the Douglas County Board of Commissioners approved the parcel map at issue in this matter subject to the following conditions and findings:

a) That Petitioner provide improvement plans to Douglas County, Nevada;

b) *That Petitioner obtain an administrative permit from the Tahoe Regional Planning Agency* for environmental impacts due to the construction of the road in issue, prior to Douglas County issuing its construction permit for the road serving the individual lots;

c) That Petitioner must either complete construction of the road serving the individual lots or provide a letter of credit prior to recordation of the parcel map; and

d) That the parcel map was preliminarily approved by the Douglas County Planning Commission on December 29, 1977, subject *inter alia,* to subsequent review and approval by the Douglas County Board of Commissioners.

2. That this matter is dismissed with prejudice.

(Emphasis added). A March 22, 1983 court order ratified the stipulation and ordered the parties to adhere to it.

Fernhoff later appeared before the Planning Agency at a "show cause" hearing to explain why he had not complied with its September 1980 letter directing him to restore the road. At some point the Planning Agency notified Fernhoff that its Land Use Ordinance 81–5, which had been adopted in November 1982, prohibited construction of the road and that therefore it could not accept his application for an administrative permit.[1]

On October 26, 1983, Fernhoff filed the current action, a petition for writ of mandamus against the Planning Agency, in state court. The Planning Agency removed the proceeding to the United States District Court. Fernhoff seeks a writ of mandamus declaring that the Planning Agency is without jurisdiction to prohibit his development project or, in the alternative, directing it to grant all necessary approvals for the project. In a published opinion, the district court granted the Planning Agency's motion for summary judgment on November 30, 1984. *Fernhoff v. Tahoe Regional Planning Agency,* 599 F.Supp. 185 (D.Nev.1984). Fernhoff appeals.[2]

---

1. There is some confusion regarding the dates of both the "show cause" hearing and the letter stating that Land Use Ordinance 81–5 prohibited construction of the road. The Planning Agency contends the hearing took place July 27, 1983 and the letter was sent August 25, 1983, citing exhibits that are not part of the record on appeal. Fernhoff contends the hearing occurred in August, and never mentions the letter, and provides no citation. The district court stated in its opinion that the letter was dated June 28, 1983. *See Fernhoff v. Tahoe Regional Planning Agency,* 599 F.Supp. 185, 187 (D.Nev.1984). The actual dates are not important here; if they were, we would, for summary judgment purposes, assume those dates most favorable to Fernhoff, the non-moving party.

2. Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment in favor of the Planning Agency *de novo. E.g., Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986); *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir. 1983). Viewing all the evidence in the record in the light most favorable to Fernhoff we must determine whether there is a genuine issue as to any material fact and, if not, whether the substantive law was correctly applied. *E.g., International Union of Bricklayers Local 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985); *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984).

## II. PROCEDURAL ISSUES

In the district court, the Planning Agency moved for dismissal pursuant to Fed.R. Civ.P. 12(b), and Fernhoff responded. Both parties relied upon matters outside the pleadings. The district judge, construing the Planning Agency's motion as one for summary judgment, granted the motion without an oral hearing. Fernhoff then moved for "Reconsideration, For Oral Hearing and For New Trial." The district court denied Fernhoff's motion, again without an oral hearing. Fernhoff contends the district court erred by granting summary judgment without notice or hearing and by denying his motion for reconsideration without notice or hearing.

### A. *Notice—Summary Judgment*

Although Fernhoff's argument on this point is not clear, we assume his contention is that the district court should have given him adequate notice that it was considering the Planning Agency's motion as one for summary judgment instead of one for dismissal. However, Fernhoff requested the district court to treat the motion as one for summary judgment.[3] He cannot now complain that the court did so.

### B. *Hearing—Summary Judgment*

In *Dredge Corp. v. Penny*, 338 F.2d 456 (9th Cir.1964), we stated that "a district court may not, by rule or otherwise, preclude a party from requesting oral argument, nor deny such a request when made by a party opposing the motion unless the motion for summary judgment is denied." *Id.* at 462 (footnote omitted). However, district courts are authorized "to provide by rule that a party desiring oral argument on a motion for summary judgment must apply therefor, in the absence of which oral argument will be deemed to have been waived." *Id.* at 461–62; *see also Demarest v. United States*, 718 F.2d 964, 968 (9th

Cir.) *cert. denied*, 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984). The United States District Court for the District of Nevada has adopted such a rule. Rules of Practice 16(g).

Fernhoff made no specific request for an oral hearing on the Planning Agency's motion. A district court's failure to grant an oral hearing on a motion for summary judgment does not constitute reversible error in the absence of prejudice. *Houston v. Bryan*, 725 F.2d 516, 518 (9th Cir.1984). Here, nothing in the record, briefs, or oral argument suggests any prejudice resulting from the district court's actions.

### C. *Motion for Reconsideration*

Fernhoff does not explain his contention that the district court erred by failing to provide him notice or a hearing before denying his motion for reconsideration; instead, on appeal he argues only that the court erred by not considering three exhibits attached to his motion that allegedly evidence the Planning Agency's bad intent. Fernhoff has never explained, either in the court below or on appeal, why he did not present this evidence earlier or how the court's failure to consider the exhibits was prejudicial to his case. At any rate, given our disposition of the matter, any error by the district court in failing to consider the additional evidence or to hold an oral hearing would be harmless.

## III. PLANNING AGENCY APPROVAL OF FERNHOFF'S PROJECT

Fernhoff argues that the Planning Agency has already effectively approved his development project. Consequently, he argues, the Planning Agency should be required to fulfill its duty to issue the necessary permits for completion of the development.

---

**3.** Fernhoff stated in his response to the Planning Agency's motion that, because "matters outside the pleadings have been raised by [the Planning Agency's] Motion and are also presented herein, ... [its] Motion should, therefore, be treated as a Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure." Fernhoff then discussed the standard applicable to determining motions for summary judgment. The Planning Agency attached no additional exhibits to its reply to Fernhoff's response.

In May 1978, when Fernhoff attempted to clear an area for the road, permits required for various improvements or uses of land under the Planning Agency's jurisdiction fell into one of two general categories. First, there were those permits required by a "permit-issuing authority," such as Douglas County, but not required by Planning Agency ordinances. Those permits became final without the necessity of review by the Planning Agency, although the Agency still retained some authority to challenge them on the ground that they violated its ordinances. *See* TRPA Land Use Ordinance 4.31 (1978). The permit Fernhoff needed in order to divide his property into four parcels fell into this category. The second group of permits consisted of those which were required by a Planning Agency ordinance. Those permits also were to be issued by the permit-issuing authority, Land Use Ordinance 4.10(2), but were to be reviewed subsequently by the Planning Agency, *id.* 4.32. Article VI(k) of the Tahoe Regional Planning Compact provided that if the Planning Agency were required to review a project but failed to take final action within 60 days after receiving the proposal, the project was "deemed approved." 83 Stat. 367–68. The permit Fernhoff needed in order to construct the road fell into this latter category. *See* Land Use Ordinance 7.12(25).

■ Fernhoff contends that he had all necessary authorizations from Douglas County both to subdivide his property and to construct the road once he fulfilled the conditions attached to the County's tentative approval of his parcel map in December, 1977. He points out that both the subdivision and the road were depicted on his parcel map and argues that at that time it was the County's practice to issue a single permit to cover both the division of the land and the construction of the road.

He further contends that his parcel map, which included both the subdivision and the road, was "deemed approved" by the Planning Agency because it failed to act on his application within 60 days of receiving the map in December 1977.[4] Finally, Fernhoff argues that the Planning Agency's right to seek judicial review terminated 25 days after it was deemed to have approved his map. We reject Fernhoff's argument.

In March 1983 Fernhoff and Douglas County settled Fernhoff's 1981 suit against the County by entering into a court-approved stipulation that established both the legal effect of the County's actions in 1977 and the requirements that Fernhoff needed to meet before completing his project. Fernhoff was represented by counsel in the 1983 litigation. The parties stipulated that "[Fernhoff's] parcel map was preliminarily approved by the Douglas County Planning Commission on December 29, 1977, subject *inter alia,* to subsequent review and approval by the Douglas County Board of Commissioners." The parties further stipulated that the Douglas County Board of Commissioners approved the parcel map on September 9, 1982 subject to several conditions. Most important of all, the parties stipulated that Fernhoff must *"obtain* an administrative permit from the Tahoe Regional Planning Agency for environmental impacts due to the construction of the road in issue, prior to Douglas County issuing its construction permit for the road." (Emphasis added).

At the time of the stipulation, the Planning Agency's position was clear. In September 1980 the Agency had notified Fernhoff that the road he had started to construct was unauthorized and had ordered him to restore the property to its natural condition. Between September 1980 and March 1983 the Agency gave no indication that it had changed its stance. The stipula-

---

4. As explained *supra,* the Planning Agency's ordinances did not require it to approve proposed subdivisions. Nevertheless, Fernhoff contends that the Planning Agency was required to approve such proposals pursuant to its own policy and that therefore his application to divide his property into four parts was "deemed approved" by the agency. At oral argument, Fernhoff moved to supplement the record on appeal with a letter from the Planning Agency to Douglas County which he contends establishes this contention. While we grant his motion, the letter does not affect our disposition of the appeal.

tion itself did not confer permission from the Planning Agency to construct the road nor require the Agency to grant permission. Nor could it have done so. The Planning Agency was not a party to the lawsuit or the stipulation; consequently, nothing in the stipulation could have served to waive or could otherwise have affected the agency's position that Fernhoff did not have permission to build the road.[5]

The stipulation Fernhoff entered into directly contradicts his argument that prior to its execution he had obtained all the necessary authorizations from the Planning Agency to build the proposed road. In the stipulation, Fernhoff agreed that he was required to "obtain an administrative permit from the [Planning Agency]" (to be followed by a construction permit from the County) before beginning work on the road.[6] This admission is clearly inconsistent with his contention here that his proposed development had already been *deemed approved* by the Planning Agency. An applicant whose project is deemed approved by an agency is entitled to proceed with that project without obtaining a further permit, or any other express authorization from that agency. Moreover, in order to "obtain" a permit from the Planning Agency, Fernhoff was required to follow its ordinary application procedure and fulfill all its then applicable requirements. The stipulation did not provide that obtaining the Planning Agency's approval would be automatic, nor, as we explained *supra,* could it validly have done so. Because Fernhoff's admissions in the stipulation are so clearly inconsistent with his argument that the proposal to build the road was "deemed approved" by the Planning Agency in 1978, his argument cannot succeed here. *See Andrews v. Hotel Sherman,* 138 F.2d 524, 531 (7th Cir.1943) (stipulation in

previous suit involving plaintiff and third party constitutes judicial admission which may be used against plaintiff in current suit); 83 C.J.S. *Stipulations* § 24 (1953) (same); *cf., e.g., Walaschek & Associates v. Crow,* 733 F.2d 51, 54 (7th Cir.1984) (pleading in prior proceeding involving different defendant admissible against plaintiff as an admission); *see generally* 4 *Weinstein's Evidence* ¶ 801(d)(2) [01] (1985) (discussing admissions).

Fernhoff offered no evidence to contradict the facts established by the admission contained in the stipulation—that he still needed, as of March 1983, to obtain a permit from the Planning Agency for construction of the road and, thus, that his proposal had not been previously "deemed approved" by the Agency. His arguments to the contrary, without more, are insufficient to defeat summary judgment. *See, e.g., Kung v. Fom Investment Corp.,* 563 F.2d 1316, 1318 (9th Cir.1977) (per curiam).

Fernhoff argues that the stipulation was only a "formality" not intended to abrogate the Planning Agency's or the County's approval of his map, and that it was his understanding at the time that since the Planning Agency had already effectively approved the project in 1978 it "would cooperate in 'good faith'" by issuing an administrative permit. However, the stipulation clearly is not a mere "formality"; rather, it served as the basis for the dismissal of the litigation with the County and it set forth the substantive provisions that were to govern the future obligations of the parties.

As we explained *supra,* there can be no question as to the Planning Agency's position at the time of Fernhoff's suit against the County. The Agency was vigorously

---

5. Fernhoff contends that the Planning Agency and Douglas County are in privity and that the agency is therefore bound by the judgments in the suits concerning Fernhoff's development project. The factors Fernhoff cites to support his argument do not, taken individually or in combination, establish that the Planning Agency and the County are in privity. Moreover, even if the two were in privity, the stipulation does not purport to alter the Planning Agency's posi-

tion that Fernhoff does not have its permission to build the road.

6. In addition, final approval from Douglas County to divide the property into four parcels was conditioned on Fernhoff's actually constructing the road or providing a letter of credit that would ensure its construction.

maintaining the position that it had not given Fernhoff permission to construct the road: it had given no indication that it would award him such a permit automatically or that it would do so if he failed to meet all requirements then in effect. Against this background, Fernhoff agreed to obtain an administrative permit from the Planning Agency for construction of the road as a condition to the County's approval of the project.

Fernhoff acknowledges that since 1983 he has made no application to the Planning Agency for an administrative permit. Furthermore, the agency has advised him that any application for such a permit would be denied on the ground that construction of the road is prohibited by Land Use Ordinance 81–5. Fernhoff does not disagree with the Planning Agency's construction of Ordinance 81–5. He contends only that the Ordinance should not be applied in his case because his project is already effectively approved based on events that occurred before the ordinance was adopted. For the reasons stated above, we have already rejected his contention regarding such prior approval.[7]

## IV. RES JUDICATA, COLLATERAL ESTOPPEL, AND DOUBLE JEOPARDY

The dispute over Fernhoff's parcel spawned three lawsuits prior to the case at bar: a criminal and a civil suit by Douglas County against Fernhoff, and an action by Fernhoff against the County seeking a writ of mandamus. Fernhoff contends that the doctrines of res judicata, collateral estoppel, and double jeopardy dictate that he prevail in the current action because "taken together the three (3) cases failed to show any wrong doing" on his part. He argues that the Planning Agency is bound

by these judgments because it is in privity with the County.

In order to invoke res judicata or collateral estoppel, Fernhoff must, at the least, show that an issue involved in the present action was finally and conclusively resolved in his favor. See, e.g., City of Reno v. Nevada First Thrift, 100 Nev. 483, 686 P.2d 231, 234 (1984); Paradise Palms Community Association v. Paradise Homes, 89 Nev. 27, 505 P.2d 596, cert. denied, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117 (1973).[8] Fernhoff's criminal conviction was reversed solely because of an erroneous jury instruction, and no determination on the merits was ever made. The County's civil action was dismissed without any judgment on the merits. Fernhoff's civil action was also dismissed—in accordance with a stipulation by the parties. The terms of that stipulation did not purport to resolve any issue pertinent to this action in Fernhoff's favor. Because none of the three suits resulted in a final resolution of any pertinent issue in favor of Fernhoff, the doctrines of res judicata and collateral estoppel are clearly inapplicable. See City of Reno, 686 P.2d at 234; Paradise Palms Community Association, 505 P.2d at 599. Moreover, Fernhoff's criminal prosecution does not give rise to a double jeopardy claim both because his conviction was reversed on a ground other than the sufficiency of the evidence, see United States v. Scott, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978), and because he is not being prosecuted or punished a second time for the same offense, see, e.g., Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

## V. CONCLUSION

We hold that Fernhoff is not entitled to either a declaration that he has the neces-

---

7. Fernhoff also argues that, because the Planning Agency approved his proposal and he reasonably and detrimentally relied on that approval, the Agency is estopped from contesting his authorization to develop his land and he has a vested right to complete the project. We need not address these arguments because both are based on the contention that the Planning Agen-

cy approved Fernhoff's proposal, a contention which we have rejected.

8. Federal courts must apply state law in determining the preclusive effect of state judgments. See, e.g., Marrese v. American Ass'n of Orthopedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

sary authorizations to develop his property or an order directing the Planning Agency to issue the appropriate permits. We conclude that his proposed construction of the road was not "deemed approved" by the Planning Agency and that he may not proceed with the proposed development of the property without the requisite permits. We reject Fernhoff's collateral estoppel, res judicata, and double jeopardy arguments. Accordingly, we affirm the district court's grant of the Planning Agency's motion for summary judgment and hold that the court did not err in denying Fernhoff's petition for writ of mandamus.