FILED

NOT FOR PUBLICATION

NOV 09 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-11-1631-DJuKi |
| SAMAN HASNAIN, | Bk. No.  10-58064-SLJ |
| Debtor. | Adv. No. 10-05380-SLJ |
| SAMAN HASNAIN, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| MICHAEL CHADD, | |
| Appellee. | |

Submitted Without Oral Argument
on October 19, 2012

Filed - November 9, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:    Appellant Saman Hasnain and appellee Michael Chadd
pro se on briefs.

Before:  DUNN, JURY and KIRSCHER, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellee Michael Chadd moved for summary judgment on his complaint against the debtor, Saman Hasnain,[2] to except a debt from discharge under § 523(a)(4) and (a)(19)("exception to discharge complaint").[3]  The debt arose from a confirmed arbitration award against the debtor for violations of California securities laws, fraud and conversion.  The bankruptcy court granted summary judgment in Chadd's favor ("summary judgment order"), giving issue preclusive effect to the arbitration judgment.  The debtor appeals the bankruptcy court's summary judgment order.  We AFFIRM.

**FACTS**

A.    Chadd's state court action

Approximately four years before the debtor filed for bankruptcy protection, Chadd entered into an operating agreement with the debtor's husband, Jawad Hasnain, and others to form Westland Homes, LLC ("Westland Homes"), a real estate development company.  Westland Homes was formed to develop several town homes on a tract of land in Fremont, California ("Fremont property").

Under the operating agreement, the signatories were required

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] Chadd sought to except the debt from discharge under § 523(a)(2)(A), (a)(4), (a)(6) and (a)(19).  The bankruptcy court granted summary judgment based on the judgment confirming the final arbitration award which it determined to have set forth findings sufficient under § 523(a)(4) and 523(a)(19).

2

to purchase securities in the form of member interests in Westland Homes. The proceeds from the sale of the securities ("investment proceeds") were to be invested in the development of the Fremont property. The operating agreement also required the signatories to participate in arbitration in the event of a dispute concerning Westland Homes ("arbitration clause").

Chadd was a member of Westland Homes, having signed the operating agreement and purchased securities. The debtor's husband was a member, as well as the manager, of Westland Homes. The debtor was neither a signatory to the operating agreement nor a member of Westland Homes.

On September 11, 2008, Chadd filed a complaint in state court[4] against the debtor, her husband and Westland Homes[5] for violations of California securities laws, fraud, conversion and joint venture ("state court action" or "state court complaint").[6]

---

[4] Neither Chadd nor the debtor provided a copy of the state court complaint in the record before us. Chadd attached a copy of the state court complaint as an exhibit to his exception to discharge complaint. We reviewed the state court complaint from the bankruptcy court's electronic adversary proceeding docket. See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 958 (9th Cir. 1989)(court may take judicial notice of underlying bankruptcy records).

[5] Chadd also named Westland Homes' two other members, Vidyasager Vaman Despande and Paul Duggan, as defendants in the state court action.

[6] Chadd asserted the following causes of action against the debtor and her husband in his state court complaint: (1) securities violations under Cal. Corp. Code §§ 25401 and 25300l; (2) fraud; (3) conversion; (4) "money had and received" (i.e., investment funds intended for use by Westland Homes but
(continued...)

3

Chadd alleged that the debtor and her husband engaged in a joint venture as to Westland Homes' operations. Chadd claimed that the debtor, her husband and/or Westland Homes (1) made numerous misrepresentations about the rate of return on his investment, the amounts invested by the debtor's husband in Westland Homes and his experience in real estate development, among other things; (2) represented that the debtor was the real estate agent responsible for selling the town homes on the Fremont property; (3) failed to disclose that the debtor's husband previously had filed for bankruptcy and had lawsuits pending against him; (4) converted the investment proceeds for the debtor and her husband's personal use; and (5) failed to return the investment proceeds to Chadd. He also alleged that the debtor knew about her husband's wrongful actions and/or "ratified and approved" his conduct and "accepted the benefits of his wrongful actions."

B. The state court arbitration

The debtor, her husband and Westland Homes moved to compel arbitration ("arbitration motion") in the state court action. They argued that, under the terms of the operating agreement, any dispute relating to Westland Homes must be addressed through mediation first. If no resolution was reached through mediation,

---

[6](...continued) instead used by the debtor and her husband for their personal use and not returned by either the debtor or her husband); (5) "aiding and abetting" in wrongfully obtaining and/or misusing Chadd's investment funds; (6) violation of Cal. Bus. & Prof. Code § 17200; and (7) joint venture. Chadd also asserted causes of action against the debtor's husband only.

4

the dispute was to be addressed through arbitration. According to the debtor, her husband and Westland Homes, the parties tried to resolve the matter through mediation, but were unsuccessful. They also pointed out that the debtor did not sign the operating agreement and had no involvement with Westland Homes. The state court granted the arbitration motion.

The arbitration took place over two hearings ("arbitration hearings"). The debtor, her husband, Westland Homes and Chadd were represented by counsel in the arbitration. A retired judge acted as arbitrator. After considering the briefs and evidence submitted by the parties, the arbitrator issued an interim arbitration award in Chadd's favor ("interim arbitration award").

The arbitrator found that the liability of the debtor and her husband was "direct and personal." Although the debtor had not signed the operating agreement with the arbitration clause, the arbitrator determined that she nonetheless became a party to the arbitration by participating in it. The arbitrator concluded that the debtor, her husband and Westland Homes were jointly and severally liable for violating California securities laws by (1) selling unqualified and nonexempt member interests in Westland Homes to Chadd and (2) making misleading statements and omitting material facts in selling member interests in Westland Homes to Chadd. He also concluded that the debtor, her husband and Westland Homes were jointly and severally liable to Chadd for breach of fiduciary duty.

Shortly after the arbitrator issued the interim arbitration award, the debtor submitted a brief contesting it ("arbitration participation brief"). Despite her having joined in the

5

arbitration motion, she contended that she was not bound by the interim arbitration award because she was not a proper party to the arbitration. The debtor argued that only signatories to the operating agreement had to submit to arbitration under the arbitration clause. Because she had not signed the operating agreement, the debtor was not subject to the arbitration. She further contended that she was not subject to the arbitration because she did not receive any benefits from the operating agreement. The debtor also claimed that she had no involvement with Westland Homes.

The debtor further maintained that she was not bound by the interim arbitration award because she did not actively participate in the arbitration. She argued that simply raising minimal defenses in response to the state court action and providing direct testimony at the arbitration hearings did not make her a party to the arbitration. The debtor claimed that she only appeared at the arbitration hearings because she believed that she was required to do so under a notice to appear issued by Chadd ("arbitration appearance notice") and an order issued by the arbitrator ("arbitration appearance order").

She also contended that the interim arbitration award set forth findings as to her liability beyond those alleged by Chadd in the state court complaint. The debtor was found to be liable on the same grounds as those asserted against her husband, even though they had not been asserted against her in the state court complaint. Moreover, she argued, Chadd did not offer any evidence demonstrating that she was liable for violations of California securities laws.

Two months after the debtor filed her arbitration participation brief, on July 6, 2010, the arbitrator issued the final arbitration award which "incorporated the contents of the [interim arbitration award], except as amended." He found that, although the debtor did not sign the operating agreement, she still was subject to arbitration because she had "voluntarily participated in the arbitration and by so doing, became a party to it." The arbitrator further determined that, although the debtor did not sign the operating agreement, she nonetheless participated in the "fraudulent misappropriation committed against [Chadd]" by using the investment proceeds for her personal needs.

The arbitrator found that the debtor's husband had offered and sold unqualified securities in Westland Homes in violation of Cal. Corp. Code § 25110. He also found that the debtor, her husband and Westland Homes violated Cal. Corp. Code § 25401 by (1) misrepresenting her husband's experience and success as a real estate developer and (2) failing to advise Chadd of her husband's bankruptcy filing and of the lawsuits filed against him, among other things.

The arbitrator also determined that the debtor and her husband drew on the investment proceeds for their own personal needs, "contrary to [the] oral and written representations made by [the debtor's husband] to the investors."

Based on these findings, the arbitrator determined that the debtor, her husband and Westland Homes were jointly and severally liable to Chadd. He awarded Chadd a total of $606,402, which

7

included attorney's fees and costs.[7]

C.    The debtor's chapter 7 bankruptcy

Before Chadd could obtain confirmation of the final arbitration award,[8] on August 4, 2010, the debtor filed her chapter 7 bankruptcy petition. She scheduled Chadd as an unsecured creditor with a $600,000 claim arising from "an arbitration judgment." The deadline to file complaints objecting to discharge was November 8, 2010.

Chadd initiated an adversary proceeding against the debtor, filing the exception to discharge complaint on November 5, 2010. He repeated in the exception to discharge complaint most of the allegations he made in the state court complaint. He also asserted that the debtor had transferred into her own bank account the investment proceeds from Westland Homes' bank account and used them for her personal needs. Chadd pointed out that he obtained the final arbitration award against the debtor prepetition.

He argued that the final arbitration award was excepted from discharge under § 523(a)(4). Chadd asserted that the debtor was a fiduciary because, under the operating agreement, she was to

_____

[7] The arbitrator awarded Chadd a total of $431,402 in damages and $175,000 in attorney's fees.

[8] Under California law, a party to an arbitration, in which an award has been issued, may petition the state court to confirm, correct or vacate the arbitration award. Cal. Civ. Proc. Code §§ 1285-1287.6. A conforming judgment is entered if the arbitration award is confirmed. The judgment then has the same force and effect as any other civil judgment. Id. at § 1287.4.

ensure that the investment proceeds that had been "placed in trust" were to be used in the development of the Fremont property. He moreover claimed that the debtor was a fiduciary because she was the real estate agent for Westland Homes. The debtor fraudulently and wrongfully obtained the securities proceeds, however, by making various misrepresentations to and omitting material facts from Chadd. She then converted the investment proceeds for her own personal benefit.

He also contended that the final arbitration award was excepted from discharge under § 523(a)(19). He alleged that the debtor violated Cal. Corp. Code § 25110 in obtaining the investment proceeds from him.[9] Alternatively, the debtor engaged in fraud, deceit and/or manipulation in obtaining from Chadd the investment proceeds by making false and/or misleading statements

---

[9] Cal. Corp. Code § 25110 provides:

> It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 (and no order under Section 25140 or subdivision (a) of Section 25143 is in effect with respect to such qualification) or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with Section 25100) of this part. The offer or sale of such a security in a manner that varies or differs from, exceeds the scope of, or fails to conform with either a material term or material condition of qualification of the offering as set forth in the permit or qualification order, or a material representation as to the manner of offering which is set forth in the application for qualification, shall be an unqualified offer or sale.

9

and concealing material facts in violation of Cal. Corp. Code § 25401.[10]

The debtor answered the exception to discharge complaint. While the adversary proceeding was pending, she received her chapter 7 discharge on January 27, 2011. Two months later, Chadd filed a motion for relief from stay ("chapter 7 relief from stay motion") seeking termination of the automatic stay so that he could obtain confirmation of the final arbitration award and have it entered as a judgment. The debtor opposed the chapter 7 relief from stay motion.

At the March 29, 2011 hearing on the chapter 7 relief from stay motion, the bankruptcy court determined that there was no automatic stay in effect because the debtor had received her discharge. The bankruptcy court concluded that the final arbitration award was not discharged, however, because Chadd's exception to discharge complaint was pending before the discharge was entered.[11]

---

[10] Cal. Corp. Code § 25401 provides:

It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

[11] The bankruptcy court further reasoned that Chadd should be allowed to obtain confirmation of the final arbitration award as a matter of judicial economy. It acknowledged that the matter "[had] already been litigated somewhere else." The question
(continued...)

10

The bankruptcy court granted relief from stay under § 362, to the extent that it applied, and § 524(a)(2), to allow Chadd to obtain confirmation of the final arbitration award and have it entered as a judgment.  However, it prohibited Chadd from taking any actions to enforce any such judgment he obtained.  On April 5, 2011, the bankruptcy court entered an order consistent with its ruling ("chapter 7 relief from stay order").[12]

D.    The debtor's chapter 11 bankruptcy[13]

The state court scheduled a hearing for May 10, 2011, to confirm the arbitration award ("arbitration confirmation hearing").  One day before the arbitration confirmation hearing, the debtor filed her chapter 11 bankruptcy petition (case no. 11-54431).[14]  She also sent a letter to Chadd, advising him that her chapter 11 bankruptcy case automatically stayed the

---

[11](...continued)
remained, however, as to whether the matter had been "litigated in a way that [could] be used as collateral estoppel . . . ."  The bankruptcy court wanted "an answer to that question, rather than setting up a trial for something [that had] already been tried."  It believed that once Chadd obtained confirmation of the final arbitration award and had judgment entered on it, he could return to the bankruptcy court and move for summary judgment on his exception to discharge complaint.

[12] The debtor appealed the chapter 7 relief from stay order to this Panel (BAP no. NC-11-1174).  The Panel dismissed the debtor's appeal as moot because Chadd later obtained confirmation of the arbitration award and had judgment entered on it.

[13] The debtor's chapter 11 case was dismissed on September 13, 2011, on motion filed by the United States Trustee.

[14] Judge Stephen L. Johnson presided over the debtor's chapter 7 bankruptcy case while Judge Arthur S. Weissbrodt presided over her chapter 11 bankruptcy case.

11

arbitration confirmation hearing.

Chadd filed a motion for relief from stay in the debtor's chapter 11 bankruptcy case ("chapter 11 relief from stay motion"). He notified the bankruptcy court of the debtor's chapter 7 bankruptcy case, the exception to discharge complaint and the chapter 7 relief from stay order. He asked that the bankruptcy court lift the automatic stay imposed by the debtor's chapter 11 bankruptcy case so that he could proceed with the arbitration confirmation hearing "to facilitate" the summary judgment motion he intended to file against the debtor in the adversary proceeding. The bankruptcy court granted the chapter 11 relief from stay motion, entering an order on July 19, 2011 ("chapter 11 relief from stay order"). The debtor did not appeal the chapter 11 relief from stay order.

E.    The cross-motions for summary judgment

The arbitration confirmation hearing took place on August 23, 2011. At the arbitration confirmation hearing, the state court noted that the matter had been arbitrated and adjudicated and an arbitration award had been entered. Based on these circumstances, the state court confirmed the final arbitration award. It issued an order confirming the final arbitration award on August 25, 2011 ("arbitration confirmation order"). It also issued a judgment against the debtor in the total amount of $751,250.11 ("arbitration judgment").[15]  The

---

[15] The state court judge signed the arbitration confirmation order on August 23, 2011. The arbitration confirmation order was endorsed on August 25, 2011, and filed on August 29, 2011. The
                                                        (continued...)

12

debtor did not appeal the arbitration judgment.[16]

Prior to the arbitration confirmation hearing, on July 21, 2011, the debtor filed a motion for summary judgment ("debtor's summary judgment motion") in the adversary proceeding. Chadd filed his own motion for summary judgment on September 13, 2011 ("Chadd's summary judgment motion").

The debtor argued in her summary judgment motion that the bankruptcy court should not give issue preclusive effect to the arbitration award because it did not establish the elements under § 523(a)(4) and (a)(19).[17] She contended that the bankruptcy

---

[15](...continued)
state court judge signed the judgment on August 25, 2011. The judgment was endorsed on the same day.

[16] The debtor included in her summary judgment motion her responses to Chadd's interrogatory requests. In response to the statement that she had "not objected to the arbitration award with any court," the debtor explained that she did not do so because she "could not afford to go through [a] lengthy appeal process in State Court, therefore [she] immediately filed [her] bankruptcy petition after [the] arbitration award was given."

[17] Section 523 provides, in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
        . . . [or]
    (19) that –
        (A) is for –
            (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or
(continued...)

13

court instead should discharge the final arbitration award and the arbitration judgment.

With respect to the § 523(a)(4) claim, the debtor asserted that she was not a fiduciary because she was not the real estate agent for Westland Homes or a signatory to the operating agreement. She also did not take any investment proceeds from Westland Homes' bank account because she lacked authority to access it; only her husband had authority to access Westland Homes' bank account. She contended that her husband was entitled to make withdrawals from Westland Homes' bank account to pay part of his salary per the operating agreement. The debtor also claimed that she had no knowledge of her husband's withdrawals from Westland Homes' bank account or how he used them.

As for the § 523(a)(19) claim, the debtor argued that she

---

[17](...continued)
order issued under such Federal or State securities laws; or
(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from –
(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
(ii) any settlement agreement entered into by the debtor; or
(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

14

could not have sold securities in Westland Homes to Chadd because she was not involved in Westland Homes in any way; she was not a member or the real estate agent for Westland Homes. The debtor moreover did not sign the operating agreement.

Chadd contended in his summary judgment motion that the arbitration award should be given issue preclusive effect under California law. He claimed that the arbitrator set forth findings sufficient to establish fraud, embezzlement and/or larceny under § 523(a)(4) and securities law violations under § 523(a)(19), thereby rendering relitigation of these claims unnecessary.

The bankruptcy court initially set a hearing for October 4, 2011, on the cross-motions for summary judgment. It later vacated the hearing, determining that oral argument was unnecessary. It advised the parties that it would take the cross-motions for summary judgment under advisement and issue a written decision.

The bankruptcy court entered the summary judgment order, denying the debtor's summary judgment motion and granting Chadd's summary judgment motion, on October 27, 2011. It entered judgment against the debtor, excepting the state court judgment from the debtor's discharge, on October 28, 2011.

The bankruptcy court set forth its factual findings and legal conclusions in the summary judgment order. It concluded that the final arbitration award and arbitration judgment were entitled to preclusive effect under California law. In particular, the bankruptcy court determined that: (1) both Chadd and the debtor had been parties to the arbitration and the

15

arbitration confirmation hearing; (2) the issues of fraud and embezzlement had been actually litigated, as the arbitrator received and reviewed the parties' evidence and briefs and heard oral argument during the arbitration hearings; and (3) the arbitrator necessarily decided that the debtor was liable for violating California securities laws and fraudulently misappropriating the investment proceeds for her own use, which would be part of a bankruptcy court's exception to discharge determinations under § 523(a)(4) and (a)(19).

The debtor filed her notice of appeal of the summary judgment order and judgment ("appeal notice") on November 4, 2011. Three days later, she filed a motion for reconsideration of the summary judgment order and judgment ("motion to reconsider"). The bankruptcy court denied the debtor's motion to reconsider, entering an order on November 14, 2011 ("reconsideration order"). The debtor did not appeal the reconsideration order.[18]

---

[18] The Civil Rules do not recognize motions for reconsideration. Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.), 311 B.R. 530, 539 (9th Cir. BAP 2004). The Civil Rules do provide, however, two avenues through which a party may obtain post-judgment relief: (1) a motion to alter or amend judgment under Civil Rule 59(e) and (2) a motion for relief from judgment under Civil Rule 60. Civil Rule 59(e) applies to bankruptcy proceedings under Rule 9023, and Civil Rule 60 applies to bankruptcy proceedings under Rule 9024. "When taken together, [Civil] Rule 59 and [Civil] Rule 60 encompass all possible post-judgment relief: [Civil] Rule 59 incorporates common law principles of equity for granting new trials, and [Civil] Rule 60 preserves the relief afforded by ancient remedies for relief from settlement judgments while abolishing the separate and independent use of those remedies." In re Walker, 332 B.R. 820, (continued...)

16

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Did the bankruptcy court err in granting summary judgment in Chadd's favor by giving issue preclusive effect to the final arbitration award?

(2) Did the final arbitration award, as confirmed by the

---

[18](...continued) 831-32 (Bankr. D. Nev. 2005)(internal citations omitted).

Where a party files a motion for reconsideration within 14 days following the date of the entry of judgment, the motion is treated as a motion to alter or amend judgment under Civil Rule 59(e). Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001)(citation omitted).

For these purposes, the debtor timely filed the motion to reconsider. The bankruptcy court denied the motion to reconsider because it believed that it was divested of jurisdiction under the pending appeal notice.

The bankruptcy court still had jurisdiction to decide the motion to reconsider, however. See Rule 8002(b)(2)(4)("If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion . . . for (3) a new trial under Rule 9023; . . . ."). The debtor included the denial of her motion to reconsider as an issue on appeal, but she did not argue it in her brief. Accordingly, this issue is waived. See Rule 8010(1)(E)(brief must set forth contentions with respect to issues presented and reasons therefor). See also In re Marquam Inv. Corp., 942 F.2d 1462, 1467 (9th Cir. 1991)(determining issue on appeal was waived because appellant did not comply with Rule 8010(a)(1)(C) as it failed to provide statement of issues presented and applicable standard of review and to provide in its brief argument containing its contentions on issues presented).

17

arbitration confirmation order and the arbitration judgment, satisfy the elements for an exception to discharge judgment?

**STANDARD OF REVIEW**

We review de novo a bankruptcy court's ruling on cross-motions for summary judgment. See CRM Collateral II, Inc. v. TriCounty Metro. Transp., 669 F.3d 963, 968 (9th Cir. 2012) (citation omitted). "When the bankruptcy court disposes of a case on cross-motions for summary judgment, we may review both the grant of the prevailing party's motion and the corresponding denial of the opponent's motion." Id. (citation omitted).

Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether any genuine issues of material fact exist and whether the bankruptcy court correctly applied the relevant substantive law. Id. (quoting Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011)).

We review de novo the bankruptcy court's determination that issue preclusion is available. See Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994). If we conclude that issue preclusion is available, we review for abuse of discretion the bankruptcy court's decision giving issue preclusive effect to the state court ruling. Id.

**DISCUSSION**

On appeal, the debtor contends that the bankruptcy court erred in granting summary judgment in Chadd's favor, setting forth four main arguments: (1) the bankruptcy court failed to provide her an opportunity to present her case by canceling the

18

hearing on the cross-motions for summary judgment; (2) she was not a party to the prior suit, i.e., the arbitration; (3) the issues of fraud and securities law violations were not actually litigated in the arbitration; and (4) the issues of fraud and securities law violations were not necessarily decided in the arbitration.

Before we begin our analysis, we must outline the general principles of issue preclusion within the context of § 523(a) cases. Issue preclusion may be applied in exception to discharge proceedings. Grogan v. Garner, 498 U.S. 279, 284 (1991). Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008)(quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)(internal quotation marks omitted)).

We refer to the preclusion law of the state in which the judgment was rendered to determine the preclusive effect of a state court judgment. Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003)(quoting Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). Here, California law applies. Under California law, issue preclusion can be applied when: (1) the issue decided in the prior proceeding is identical to the issue sought to be relitigated in the subsequent proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) a final judgment on the merits was issued in the prior proceeding; and (5) the party against whom

19

issue preclusion is sought was a party to the prior proceeding. Lucido v. Superior Court, 51 Cal. 3d 335, 337 (1990). Even if all of these five elements are met, issue preclusion only may be applied when the public policies underlying it would be advanced. Id. at 354.

A state court's confirmation of an arbitration award constitutes a judicial proceeding entitled to the full faith and credit it would receive under state law. Caldeira v. County of Kauai, 866 F.2d 1175, 1178 (9th Cir. 1989). In California, a judgment confirming an arbitration award has the same force and effect as a judgment in a civil action. Cal. Civ. Proc. Code § 1287.4.

A.   Hearing on the debtor's summary judgment motion

The debtor first claims that the bankruptcy court erred in failing to afford her an opportunity to present her case by deciding to issue a ruling without holding a hearing on the cross-motions for summary judgment.

The bankruptcy court was not required to hold a hearing on the debtor's summary judgment motion, however, unless required to do so under the local bankruptcy rules. See Fernhoff v. Tahoe Regional Planning Agency, 803 F.2d 979, 983 (9th Cir. 1986)("a district court may not, by rule or otherwise, preclude a party from requesting oral argument . . . [though] district courts are authorized 'to provide by rule that a party desiring oral argument on a motion for summary judgment must apply therefor, in the absence of which oral argument will be deemed to have been waived.'")(quoting Dredge Corp. v. Penny, 338 F.2d 456 (9th Cir.

20

1964)).[19]  There is nothing in the local bankruptcy rules for the Northern District of California requiring the bankruptcy court to hold hearings on motions for summary judgment.  See Bankruptcy Local Rules 7003-1(f), 9013-1, 9013-2 and 9013-3.  Moreover, the debtor did not request a hearing on her summary judgment motion.  The bankruptcy court therefore did not err in declining to hold a hearing on the cross-motions for summary judgment.

B.    Participation in arbitration

The debtor next argues that she was not a party to the arbitration because she did not sign the operating agreement that required arbitration of disputes concerning Westland Homes.  She further argued that she only appeared in the arbitration as a witness, being compelled to do so by the arbitration appearance notice and arbitration appearance order.  Because she was not a party to the arbitration, the debtor continues, the element requiring identical parties for issue preclusion was not met.

The arbitrator expressly determined that the debtor was a party to the arbitration.  He found that though she did not sign

---

[19] The Ninth Circuit in Fernhoff relied on Dredge Corp.; both cases dealt with motions for summary judgment decided in district court.  Dredge Corp. looked to Civil Rules 56(c), 78 and 83 in formulating the proposition relied on by Fernhoff.  The Federal Rules of Bankruptcy Procedure did not adopt Civil Rule 78, which authorizes district courts to provide for submissions and determinations on motions on the briefs without oral argument.  Civil Rule 78 therefore does not apply in bankruptcy cases.  The Federal Rules of Bankruptcy Procedure also did not adopt Civil Rule 83, which authorizes district courts to make rules for their districts.  Instead, Rule 9029 allows district courts to authorize bankruptcy courts within their districts to adopt local rules.

21

the operating agreement containing the arbitration clause, the debtor "voluntarily participated" in the arbitration. As noted above, she joined in the arbitration motion.

The debtor contends that a greater level of participation than she provided is required to become a party to arbitration. She insists that appearing and testifying at the arbitration hearings do not qualify as "active participation." Rather, her participation in the arbitration "was no more than that of any witness who could have been subpoenaed by counsel." Appellant's Opening Brief at 8.

Participation in arbitration does not require a particular level of activity. "Participation" simply means "to take part" or "to share in something." The American Heritage Dictionary of the English Language, 4th ed. p. 1281 (2000). To participate in any activity, one simply joins in. By appearing and testifying at the arbitration hearings and by being represented by counsel in the arbitration, the debtor took part in the arbitration. The arbitrator clearly so found when he made his determination.

Additionally, as the state court pointed out at the arbitration confirmation hearing, the debtor and her husband have been active parties in all the proceedings connected to the state court action, having been named as defendants. The debtor and her husband also specifically requested that the matter go to arbitration. In making such a request, the debtor voluntarily – nay, willingly – subjected herself to arbitration. She cannot now say that she was not subject to the arbitration when the arbitrator issued a decision against her. The bankruptcy court therefore did not err in determining that this element of issue

22

preclusion was met.

C.    Actually litigated

The debtor next contends that she did not have the opportunity to present evidence to the arbitrator, as she only appeared as a witness at the arbitration. Because she had no chance to litigate her case before the arbitrator, she contends that the issues of fraud and securities law violations as they related to her were not actually litigated.

We disagree. As we mentioned earlier, the debtor and her husband were named as defendants in the state court action. They were represented by the same counsel. The debtor and her husband answered Chadd's state court complaint. They also sought and obtained arbitration of the state court action. Over the course of two hearings, the arbitrator received briefs, testimony and oral arguments from the parties' counsel. As a party to both the state court action and the arbitration, the debtor had ample opportunity to present evidence to make her case. Indeed, she did present evidence by providing testimony at the arbitration hearings. Her testimony constituted evidence that the arbitrator was free to evaluate and consider. See, e.g., In re Checkmate Stereo & Electronics, Ltd., 21 B.R. 402, 413 (E.D.N.Y. 1982). Moreover, as the debtor and her husband were represented by the same attorney in the state court action and the arbitration, any evidence submitted by their attorney relating to her husband was submitted on the debtor's behalf as well.

Based on these circumstances, the debtor's argument that the issues of fraud and securities law violations were not actually litigated at the arbitration hearings has no merit. The

23

bankruptcy court therefore did not err in determining that these issues were actually litigated in the arbitration.

D. Necessarily decided

The debtor further contends that the issues of fraud under § 523(a)(4) and securities law violations under § 523(a)(19) were not necessarily decided in the arbitration. She claims that Chadd failed to provide evidence showing that she had committed fraud or misappropriated the investment proceeds while acting in a fiduciary capacity. Specifically, she argues that he did not provide evidence showing that she was a fiduciary to Chadd, as she neither was a member of Westland Homes nor the real estate agent for Westland Homes. She again stressed that she was not a member of Westland Homes because she did not sign the operating agreement. The debtor further contends that Chadd failed to provide evidence showing that she misappropriated the investment proceeds for her personal use, given that she was not a member of Westland Homes and had no access to Westland Homes' bank account.

Again, we disagree with the debtor. "Necessarily decided" means that the issues at hand were not "entirely unnecessary" to the judgement in the prior proceeding. Lucido, 51 Cal. 3d at 342 (citations omitted). Here, the arbitration award ultimately was based on findings of the debtor and her husband's securities law violations and fraud, both carried out through numerous misrepresentations and omissions made at the time Chadd purchased the securities in Westland Homes.

Although the debtor does not contest the fourth element of issue preclusion, we emphasize that the final arbitration award is final. The state court confirmed the final arbitration award,

24

and judgment was entered on it, but the debtor failed to appeal. Regardless of whether the appeal process would have been costly, if the debtor disagreed with the final arbitration award and arbitration judgment, she should have appealed them. The debtor cannot dispute them now at this late stage.

E.   The elements of § 523(a)(19) were met

As noted earlier, the bankruptcy court granted summary judgment on Chadd's § 523(a)(4) and (19) claims. Although the debtor appeals the bankruptcy court's determinations on both claims, we address its determination concerning § 523(a)(19) first.

Section 523(a)(19) provides that a debt arising from violations of state securities laws or common law fraud, deceit or manipulation in connection with the purchase or sale of any security is excepted from discharge. As set forth in the interim arbitration award, which was incorporated in the final arbitration award, the debtor and her husband were found to be "jointly and severally liable to [Chadd] for violating California Securities Laws by selling unqualified and non-exempt memberships in [Westland Homes] . . . [and by making] misleading statements and omissions of material facts by [the debtor's husband] in selling a membership in [Westland Homes] to [Chadd]" and that "[their] liability [was] direct and personal."

These findings made by the arbitrator are all that are required to except the final arbitration award and arbitration judgment from discharge under § 523(a)(19). The final arbitration award was confirmed and the arbitration judgment was entered. Because the debtor did not appeal the confirmed

25

arbitration judgment, it is final. Chadd therefore is entitled to have the final arbitration award accorded issue preclusive effect, as determined in the bankruptcy court's summary judgment order and judgment. In light of that conclusion, we do not need to consider the debtor's arguments with respect to the application of § 523(a)(4).

**CONCLUSION**

Based on our review, the bankruptcy court did not err in granting summary judgment in Chadd's favor by giving issue preclusive effect to the final arbitration award and the arbitration judgment. We AFFIRM.